242

## CARBORUNDUM CO. v. ALOX CORPORATION.

### Patent Appeal No. 4897.

Court of Customs and Patent Appeals.

June 26, 1944.

On Rehearing Oct. 2, 1944.

George E. Stebbins, of Pittsburgh, Pa. (Donald A. Gardiner, of Washington, D. C., of counsel), for appellant.

Pierce & Scheffler, of Washington, D. C. (Ralph E. Parker, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents (speaking through an assistant commissioner), 56 U.S.P.Q. 111, affirming the decision of the Examiner of Trade-Mark Interferences dismissing appellant's notice of opposition (No. 21,056) to appellee's application (serial No. 439,425) for registration of the notation "Alox" for "oxidized petrole-um hydrocarbon masses in paste to liquid form," and holding appellee entitled to the registration sought.

Appellant's opposition is based upon its ownership, use, and registrations of a mark consisting of the coined word "Aloxite" on various products hereinafter described so far as pertinent to this case. There are five registrations of the mark, all of them antedating the date of appellee's application.

The case is one of four oppositions (involving the same parties and the same contesting marks) which, by stipulation, were "consolidated for the purpose of taking testimony and hearing." The stipulation provided that "a single record be accepted and used as a basis for decisions in all of said oppositions." Separate decisions were rendered below. The other three oppositions were Nos. 20,928, 20,993, and 21,061. The Examiner of Trade-Mark Interferences sustained oppositions Nos. 20,928 and 20,993. Alox Corporation took no appeal from those decisions. He dismissed opposition No. 21,061 and adjudged Alox Corporation entitled to the registration there sought. The Carborundum Company appealed to the commissioner, who affirmed the dismissal of the notice of opposition but held ex parte that Alox Corporation was not entitled to register, apparently because it had not shown use of "Alox" on the particular goods named in the application. 56 U.S.P.Q. 112. No appeal was taken from that decision. Since those three cases are not before us, it is unnecessary to consider the reasons upon which the respective decisions of them below were based, but because of the fact that there was a consolidated record embracing evidence introduced on behalf of both parties, it has been necessary for us to go through a voluminous record in order to ascertain just what portions of it have any bearing in this case.

We shall not forbear saying that it seems to us that counsel for the respective parties should have been able to agree upon a record containing only the matter pertinent to this case. A considerable saving in printing costs would thereby have been effected, together with a saving of much valuable time which the court has had to expend in studying the evidence to ascertain just what part of it is applicable to this case. Neither the brief for appellant nor that for appellee has been very helpful to us in ascertaining the *pertinent*

facts. The court has been compelled to do much work which counsel should have done.

As readily may be surmised, the goods of the Alox Corporation involved in the instant case are different from those involved in the other three cases, and this accounts, in part at least, for the difference in the conclusions reached in the several cases.

So far as the marks themselves are concerned, it cannot be seriously questioned that they bear a resemblance so close that if applied to goods of the same descriptive properties they would be likely to cause confusion. Hence, the only question necessary to be determined relates to the nature of the goods. Specifically, the question is whether the goods of appellant and the goods of appellee possess the same descriptive properties.

In appellant's notice of opposition it is alleged, following the list of registrations, that:

"3. Among the various products made and sold by the Opposer and its predecessor prior to the earliest date of use alleged by the Applicant have been abrasive products such as grinding wheels, sharpening stones, abrasive paper and cloth; refractory materials for use in making refractory cements, blocks, shapes, etc.; and *aluminum oxide grain sold for a large number of specific uses."* (Italics supplied.)

We do not find "aluminum oxide grain" mentioned eo nomine in any of appellant's pleaded registrations, but it is in evidence that the mark "Aloxite" was being used on aluminum oxide prior to the filing of appellee's application and there is evidence, as stated in effect in appellant's brief, that the aluminum abrasive was purchased by some paint manufacturers for use in certain types of paint.

The commissioner stated in his decision:

"The opposition is based on prior registrations and uses by opposer of the mark 'Axolite' for various abrasive materials, refractory materials and constructions, various grinding machines and filter plates. *One particular item is abrasive grains which may be mixed with grease or oil to produce grinding compounds for lapping and finishing operations, or may be introduced into paints to make the paints more wear resisting and less slippery.* Other items are abrasive sticks in which vaseline is incorporated and abrasive grinding wheels in which grease is incorporated. Opposer, however, does not sell paints and it does not appear that opposer sells lapping or finishing compounds as such under the name 'Axolite'." (Italics ours.)

With respect to the "oxidized petroleum hydrocarbon masses in paste to liquid form" the specific goods named in the particular application of appellee here involved, the commissioner stated:

"These products which are manufactured and sold by applicant are base materials for addition in minute quantities to lubricants, greases, oils, gasoline, paints, and similar materials, to enhance lubrication, or to increase corrosion prevention, or both. Applicant sells the base materials only. These are sold to compounders who introduce them into the oil, gasoline, etc., to make the final products. *It appears that applicant has not sold any such base material to paint concerns and does not sell any of the compounded final products."* (Italics ours.)

Appellant has challenged the accuracy of the italicized statement in the above findings and contends, in effect, that some of the products manufactured by appellee are shown to have been used by purchasers of them for incorporation into certain paints. This appears to be true to the extent that a "copper salt," produced by appellee, was advertised as being "invaluable in underwater paints to prevent marine growth on objects." Also, it was stated in the advertising circular that such salt "may also be used to impregnate nets and cordage," and, further, that a very cheap product as poisonous as creosote was manufactured for pilings, telephone poles, and the like. Reference was also made in the testimony of Dr. Arthur W. Burwell, vice president and technical director of appellee, to a leadsalt for use on some leaded paints. However, we do not find anywhere in the record any evidence that "oxidized petroleum hydrocarbon masses in paste to liquid form" (which constitute the particular product involved in this application and the one to which the commissioner obviously referred in the challenged finding) were sold to paint concerns, or that they were ever used, or represented to be of any value for use, in paints.

So, no error is apparent in the finding of the commissioner so challenged.

It may be stated that the products of appellee having a use in paints apparently were involved in oppositions Nos. 20,928 and 20,993 which, as above stated, were decided in appellant's favor by the Examiner of Trade-Mark Interferences from which decisions no appeals were taken.

We think it possible that some confusion may have grown out of certain dictum appearing in that paragraph of the commissioner's decision which reads:

"Opposer [appellant] asserts that applicant's base material and opposer's abrasive grains are goods of the same descriptive properties because they both may be introduced into the same paints. However, the materials are constituted entirely differently physically, chemically and functionally, serving entirely different purposes, and in my opinion the mere fact that *both materials may be introduced into the same paint, but for entirely different purposes, and may be purchased by the same paint manufacturers for the compounding of paints, is not sufficient in view of the differences in the materials to establish the materials as goods of the same descriptive properties.* Similarly, in my opinion, the mere fact that opposer's abrasive sticks and wheels contain some lubricant that lubricants are used therewith for cooling and lubricating purposes and applicant's product may be introduced into lubricants to enhance their lubricating and anti-corrosion properties does not render the abrasive sticks or wheels and applicant's oxidized hydrocarbon base material goods of the same descriptive properties. The differences in the physical, chemical and functional constitution of the products are too great." (Italics ours.)

Inasmuch as there is no showing that appellee's "oxidized petroleum hydrocarbon masses in paste to liquid form" are ever introduced into or used in paints of any character, the clause italicized above obviously is dictum, so far as this case is concerned.

The commissioner was clearly right, however, in his finding that the materials of appellee here involved "are constituted entirely differently physically, chemically and functionally, serving entirely different purposes," from the articles named in appellant's notice of opposition in this case, including, of course, the articles named in appellant's several pleaded registrations.

As we understand from the record, the particular product of appellee here involved is manufactured to be added to gasoline used as a fuel in internal combustion engines (such, for example, as those in automobiles), the purpose of its use being to effect lubrication and prevent corrosion of parts of the engines. It is not sold by appellee to ultimate consumers but to processors of gasoline who use it as they desire in the production of a fuel which they (under their own trade-marks, not related in any way to appellee's mark) sell to consumers.

Obviously, appellant's oxide grain material, made for use as an abrasive, would never be used voluntarily by any person "clothed, and in his right mind," in an internal combustion engine.

We agree with the holdings of the respective tribunals of the Patent Office that the goods of appellee here involved and the goods of appellant are not of the same descriptive properties.

The decision of the commissioner is affirmed.

Affirmed.

## On Petition for Rehearing.

Following the delivery of the above decision on June 26, 1944, appellant, in due time filed a petition for rehearing which has received our careful consideration, in connection with a reexamination of the somewhat voluminous record, much of which relates to three oppositions decided below and not appealed to us. As originally stated by us, the testimony in the several cases is so intertwined that the court experienced much difficulty in determining just what parts of it were pertinent only to the instant case.

In its petition for rehearing appellant had apparently endeavored to segregate the testimony here pertinent, and that has proved helpful in our restudy of the issues.

The petition alleges as point I that we incorrectly found that the particular product here involved is manufactured to be added to gasoline used as fuel in internal combustion engines. As point II it is alleged that we were mistaken in finding that the goods of the Alox Corporation involved in the instant case are different from those involved in the other three cases, and as point III it is alleged that the court was mistaken in holding

that there is no showing that appellee's oxidized petroleum hydrocarbon masses in paste to liquid form are ever introduced into or used in paints of any character.

It seems most logical to comment first upon point II.

The four applications of appellee which became involved in oppositions were all filed in the Patent Office on the same day, to wit, January 6, 1941. It would seem to be a natural inference, even if nothing further appeared, that the goods in each case differed from those in the other cases; otherwise, separate registrations of the same mark—"Alox"—would appear to have been unnecessary. But more appears. The several applications were made a part of the record upon request of counsel for appellant. An examination of these as they were amended disclosed definite differences in both the designation of the respective products and in the uses of same. It is deemed unnecessary to enter into details as to such differences, but it may be said that in applications serial Nos. 439,423 and 439,424 specific reference is made to a paint use, or a use in the nature of paint, of certain of the goods named; that in application, serial No. 439,422, the product is described as "lubricating oils and greases, and penetrating lubricating oils"; and that in the case before us the designation reads "for oxidized petroleum hydrocarbon masses in paste to liquid form for general use in the industrial arts," no reference being made to any paint use.

We think it obvious that the Examiner of Trade-Mark Interferences based his decisions in those cases (in which he sustained the oppositions and from which no appeals were taken), primarily upon the fact that the applications involved therein specifically referred to the goods as in the nature of paints and stated that they were used as paints, and so, in his view, conflicted with the goods of appellant. In opposition No. 21,061, involving application serial No. 439,422, he dismissed the notice of opposition holding that the goods were not of the same descriptive properties as the goods of appellant and this holding was expressly approved by the commissioner, the decision of the latter refusing registration being ex parte, and on a different ground. We are not convinced from the evidence cited by appellant in his petition that we were mistaken as alleged in point II.

We turn to point I. If our expression "As we understand from the record, the particular product of appellee here involved is manufactured to be added to gasoline used as a fuel in internal combustion engines (such, for example, as those in automobiles)," be construed as limiting it to use in combustion engines, apparently the statement would be too narrow. It may be conceded that it is not so limited in use, but in whatever mechanism it may be used such use is for purposes of lubrication and the prevention of corrosion; not for purposes of abrasion and not for painting. It may be said, to be exact, that the evidence indicates that the "oxidized petroleum hydrocarbon masses in paste to liquid form" are not introduced in that form into gasoline, but are first mixed with light lubricating oils by the fuel processors to whom appellee sells the product, and the mixture is introduced. This fact, however, is not of any consequence here, nor does the fact that the product may have some uses in mechanisms other than internal combustion engines affect our conclusion.

With respect to the third point alleging that we were mistaken in holding that there is no showing that appellee's product here involved is ever introduced into or used in paints of any character the petition cites certain testimony by Mr. A. W. Burwell, vice president and technical director of appellee. This testimony has been reexamined in the light of appellant's contentions. The statement of this witness upon which appellant relies was made in answer to a question propounded in cross-examination which apparently referred to his course of business in relation to the product described in *application No. 439,-423 and not the product described in application No. 439,425.* The answer, therefore, is not pertinent to the instant case unless appellant's theory that the product here involved is not different from that involved in application No. 439,423 be accepted which, in our opinion, may not properly be done. No other evidence has been cited, nor have we found any, which leads us to change our finding in this regard.

The petition for rehearing has been granted solely for the purpose of more fully expressing in writing our views upon the points raised therein. We feel assured that the conclusion originally

246

reached was correct and the same is adhered to, the decision of the commissioner being again affirmed.